UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:21-cv-80776-DMM

ADLINE HARVEY,

       Plaintiff,

v.

ITALIAN ROSE GARLIC PRODUCTS LLC, a foreign
limited liability company; and BLUE PONT CAPITAL
PARTNERS, LLC, a foreign limited liability company;
Delaware Corporations; and ANTHONY
MOSCHELLA, individually and in his official capacity;
and TERRY GAAB, individually and in his official
capacity,

       Defendants.

_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, ADLINE HARVEY (hereinafter referred to as "Plaintiff" or

"Plaintiff HARVEY"), hereby files this First Amended Complaint for Damages and Demand for

Jury Trial against Defendants, ITALIAN ROSE GARLIC PRODUCTS LLC (hereinafter referred

to as "Defendant ITALIAN ROSE"); and BLUE PONT CAPITAL PARTNERS, LLC (hereinafter

referred to as "Defendant BLUE POINT"); and ANTHONY MOSCHELLA (hereinafter referred

to as "Defendant MOSCHELLA" or "MOSCHELLA"), individually and in his official capacity

as Chief Financial Officer for Defendant ITALIAN ROSE; and TERRY GAAB (hereinafter

referred to as "Defendant "GAAB" or "GAAB"), individually and in his official capacity as Chief

Operating Officer for Defendant ITALIAN ROSE. In furtherance thereof, Plaintiff alleges as

follows:

## NATURE OF CLAIMS

1.      This is an action for damages being brought by Plaintiff against the Defendants

1

alleging violations of the Florida Civil Rights Act of 1992, Fla. Stat., 760.1001, *et seq*. ("FCRA"); Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. ss 2000e, *et seq* ("Title VII"); Florida's Private Whistleblower Act, Fla. Stat., 448.102, *et seq*. ("FPWA"); the  American with Disabilities Act of 1990, as amended, 42 U.S.C. ss 12101, *et seq*. ("ADAAA"),  as well as the following State law claims of Assault and Battery, Negligent Supervision, Negligent Retention, and Intentional Infliction of Emotional Distress.

## STATUTORY PREREQUISITES TO SUIT

2.      Plaintiff has exhausted her administrative remedies and complied with all statutory prerequisites in maintaining the claims asserted herein as required by the FCRA and Title VII. Plaintiff HARVEY filed her Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within three hundred (300) days of the unfair employment practices alleged in this Complaint. One Hundred and Eighty Dollars (180) days have elapsed since the Charge(s) of Discrimination filed with the EEOC, on October 4 and November 26, 2019.  Plaintiff Harvey received the right to sue which is with the 90 days allowed. Furthermore, Plaintiff has performed and fulfilled all conditions precedent to maintaining the claims asserted herein as required by the EEOC and Title VII.  True copies of Plaintiff's Charges of Discrimination (and all amendments) are attached as **Composite Exhibit "A."**

## THE PARTIES
## JURISDICTION AND VENUE

3.      Plaintiff HARVEY brings this action to obtain full and complete relief and to redress the unlawful employment practices described herein.

4.      The unlawful acts of the Defendants giving rise to this action were committed in Palm Beach County, Florida and thus fall within the jurisdiction of this Court.

5.      At all times material hereto, Plaintiff was a resident of Palm Beach County, Florida

and is in all respects, sui juris.

6.      Plaintiff is a member of the following protected groups: race (Black), sex (female), national origin (Haitian), and disability (hearing impaired caused by a physical defect from birth which requires external bi-lateral hearing aids).

7.      At all times material hereto and pursuant to all applicable statutes, Plaintiff was a covered employee employed by Defendant ITALIAN ROSE and Defendant BLUE POINT and supervised by Defendant MOSCHELLA and Defendant GAAB.

8.      Specifically, at all times material hereto, (a) Defendant ITALIAN ROSE and Defendant BLUE POINT was Plaintiff's "employer" within the meaning of the Florida Civil Rights Act of 1992, ("FCRA"), Fla. Stat. Section 760.01, *et. seq.* and the Florida's Private Whistleblower Act ("FPWA"), Fla. Stat. Section 448.101 *et seq.*, and (b) Plaintiff was an "employee" within the meaning of the FCRA and FPWA.

9.      At all times material hereto, Defendant ITALIAN ROSE is a foreign limited liability company organized and duly incorporated under the laws of the State of Florida, and doing business in Palm Beach County, Florida.

10.      At all times material hereto, Defendant BLUE POINT is a foreign limited liability company organized and duly incorporated under the laws of the State of Delaware, and doing business in Palm Beach County, Florida, whether directly on its own behalf or indirectly through Defendant ITALIAN ROSE.

11.      At all times material hereto, Defendant ITALIAN ROSE and Defendant BLUE POINT were Plaintiff's joint employers insofar as both entities exercised control over Plaintiff's employment including, without limitation, the adverse employment action upon which this action is partly based.

12.     At all times material hereto, Defendant MOSCHELLA resided in Palm Beach County, Florida and either held the position of Chief Operating Officer and/or Chief Financial Officer for Defendant ITALIAN ROSE.

13.     At all times material hereto, Defendant GAAB was a resident of Palm Beach County, Florida, and was the Chief Operating Officer for Defendant ITALIAN ROSE.

14.     During her employment with Defendant ITALIAN ROSE and Defendant BLUE POINT, both Defendant MOSCHELLA and Defendant GAAB shared supervisory responsibilities and direction over Plaintiff HARVEY at the West Palm Beach location for Defendant ITALIAN ROSE (located at 1380 West 15th Street, Riviera Beach, FL, 33404).

15.     Plaintiff sues Defendant MOSCHELLA and Defendant GAAB in their individual and official capacities and sues all Defendants jointly and severally.

16.     Venue is proper in Palm Beach County, Florida, because the claims giving rise to causes of action asserted in this First Amended Complaint occurred in Palm Beach County, Florida, and is within the jurisdiction of this Honorable Court.

**FACTS  COMMON TO ALL ALLEGATIONS**

17.     Plaintiff HARVEY, is a disabled, Black female of Haitian descent, and the single mother of two (2) children.

18.     Defendant ITALIAN ROSE, headquartered in West Palm Beach, FL, is a manufacturer and distributor of salsas, dips, sauces, and spreads for retail operations and restaurants.

19.     Plaintiff began working for Defendant ITALIAN ROSE and Defendant BLUE POINT in November, 2018 on a temporary assignment through a staffing agency (which lasted until April 2019), and performed services as a Senior Accountant (both on a temporary and a

4

regular basis) until her untimely and her unlawful termination on October 22, 2019.

20.     During Plaintiff's temporary assignment, and throughout her employment with Defendant ITALIAN ROSE, Defendant MOSCHELLA made subject Plaintiff to unwelcome sexual advances, requests for sexual favors, and other verbal, visual, or physical conduct of a sexual nature and assault.

21.     Plaintiff Harvey's workspace was segregated in a file closet room isolated from direct contact and visibility with staff and head managers. Plaintiff was told that her seating location was only temporary; however, non-blacks that started after HARVEY was provided a better setting location visible to staff and head mangers. As a result of the discriminatory segregation and isolation by Defendant ITALIAN ROSE and Defendant BLUE POINT, HARVEY was subjected to sexual harassment and hostile work environment.

22.     Specifically, in or about December, 2018, Defendant MOSCHELLA came on board as the Chief Operating Officer ("COO") for Defendant ITALIAN ROSE, and HARVEY was instructed told to train Defendant MOSCHELLA on a few tasksin which Plaintiff HARVEY was trained by prior COO (IVY) whom decided to resign.

23.     Almost immediately after MOSCHELLA started his employment with Defendant ITALIAN ROSE noticed HARVEY's workspace was segregated in the back file room. Defendant MOSCHELLA was discontent about the training with Plaintiff HARVEY, making comments such as "I am white," laughing and making several references to Plaintiff HARVEY purposely being isolated, and joking about HARVEY being the only black person working in the  admin department.

24.     MOSCHELLA refused the training. Yet, on days he was supposed to be trained would often make one of the following comments to HARVEY: "You are very beautiful for a

Black woman," "You are smart for a single Mom," "You smell nice," "I can train and mentor you for job security," and "I want you."   All attempts to dissuade and reject MOSCHELLA were repeatedly and intentionally ignored and disregarded.   He was consistent, persistent, and determined in his efforts.

25.     In January, 2019, Defendant MOSCHELLA stated to HARVEY "I trust you, the Gary [Silver, CFO] does not know what he is doing and is a horrible CFO." This statement was in addition to how the company will undergo a few changes, while making overt threats to HARVEY's temporary position and probing her regarding her personal life.

26.     In January 2019, Defendant MOSCHELLA called HARVEY into his office and stated that "Gary will no longer be working for ITALIAN ROSE;" "Gary is lazy and screwed up the company and I'm the only one that can fix it;" and "you need to trust me and be serious about being mentored."

27.     MOSCHELLA admitted to Plaintiff  HARVEY that he was the reason Gary Silver (prior CFO) was forced to leave and HARVEY could also lose her job as a result of ANGELO FRAGGOS (Chief Executive Officer of Defendant ITALIAN ROSE and Operating Executive of Defendant BLUE POINT) feeling as if she was not a good fit because she looked different. In this regard, MOSCHELLA made reference to HARVEY being black and disabled in addition to pointing out that Defendant BLUE POINT did not hire people who looked like Plaintiff.

28.     In February 2019, Defendant MOSCHELLA threatened HARVEY job and her family by making several attempts for out of office business meetings and, upon being denied and rejected by Plaintiff HARVEY, physically assaulting HARVEY at work.

29.     MOSCHELLA deceived HARVEY, leading her to believe he wanted to mentor her, and thus, under pretense, he would arrange meetings outside of work.

30.    Plaintiff HARVEY tried earnestly to avoid private meetings with Defendant MOSCHELLA,  but MOSCHELLA insisted, claiming he needed to mentor her if she wanted to keep her job, and to avoid threats.

31.    MOSCHELLA would also often call Plaintiff into his office under the guise that she needed him to mentor her.  Once there, MOSCHELLA would attempt to force kiss her and grope her body.  HARVEY rejected his advances, pleading for him to stop. Her demands, however, were repeatedly and intentionally ignored and disregarded.

32.    Without prompting, MOSCHELLA shared with Plaintiff that he and his wife were not having sex, and apologized for his conduct and comments, claiming they came from a place of "craving attention."

33.    In March 2019, MOSCHELLA tells Defendant to research a formal company he used to work for (Chiquita Brands), claiming he had ways to get what he wanted and also one of the reasons Mr. Fraggos agreed to hire him. MOSCHELLA stated "Angelo and I have a million dollar deal on the line, so even if you wanted to leave the company you cannot because you're the only one that knows how to run the report. So I have to mentor and I could protect you."

34.    On April 3, 2019, Plaintiff HARVEY was offered a permanent position as Senior Accountant with Defendant ITALIAN ROSE.   Her position was offered directly from MOSCHELLA, and he did not go through normal channels (i.e. Human Resources).  The position became effective on May 1, 2019.

35.    On at least one occasion, MOSCHELLA called HARVEY into his office to show her records of her address and professional licenses and make references of her child's school (while threatening to move in her neighborhood). These were clearly threats to harm her and her family if he felt as if he could not trust her, due to the constant rejection of his sexual advances.

36.     In or about January, 2019, after Defendant MOSCHELLA was promoted to Chief Financial Officer ("CFO"), Defendant ITALIAN ROSE hired Terry Gaab ("Defendant GAAB" or "GAAB") to fill the vacant COO position previously held by Defendant MOSCHELLA. As COO, GAAB reported to Defendant MOSCHELLA. GAAB also refused training by HARVEY

37.     Once Defendant GAAB commenced employment with Defendant ITALIAN ROSE, he, along with Defendant MOSCHELLA, supervised Plaintiff HARVEY.

38.     Frequently, Plaintiff HARVEY would need to prioritize assignments as she would be required to timely respond to all work requests from both Defendant MOSCHELLA and Defendant GAAB.  When Defendant GAAB's assignments did not take priority, out of apparent frustration and/or disgust, he would often verbally abuse and harass HARVEY.

39.     When incensed, GAAB would frequently use profanity when communicating with Plaintiff.  GAAB did not treat other employees (outside Plaintiff's protected categories) in the same or similar manner.

40.     During Plaintiff's employment, Plaintiff was repeatedly harassed by DEFENDANT GAAB in his capacity as COO for ITALIAN ROSE.

41.     The harassment included many inappropriate, unprofessional, and unlawful conduct.

42.     Specifically, GAAB would yell, scream, and curse at Plaintiff in an aggressive and threatening manner.  This, many times, while standing directly over her, pointing his fingers in her face, encroaching upon, and violating her personal space.

43.     Every time Plaintiff HARVEY complained to Defendant MOSCHELLA, he would tell her that if she would  just "be with him" and simply comply with his sexual demands, he would protect her.  He constantly told her that he was her "*only*" protection.  He told her on many

occasions that Defendant GAAB did not like Black women, and whenever Plaintiff rejected his sexual advances, he would remind her of that.

44.     When Plaintiff kept her distance from MOSCHELLA, or made excuses to avoid him, HARVEY was subject to more bullying by Defendant GAAB, a license to abuse her by creating and maintaining an offensive and hostile work environment. MOSCHELLA would also retaliate against her and allow GABB to sabotage her work.

45.     In July, 2019, Defendant MOSCHELLA, in his private office, allowed Defendant GAAB to use profanity toward Plaintiff as he berated, yelled, and screamed at her again saying "you work for me;" "you are here to service me;" "you need to use your brain;" and "maybe you need to turn the volume up on those things" (referring to HARVEY'S hearing aids). Although Plaintiff was brought to tears, Defendant MOSCHELLA did not intervene and ask Defendant GAAB to stop, nor did he report GAAB's behavior to Human Resources. Defendant MOSCHELLA simply turned a blind eye. Later, Defendant MOSCHELLA inexpicably blamed Plaintiff.

46.     Again, on August 7, 2019, Defendant GAAB lashed out at HARVEY, yelling, screaming, and cursing at her in front of her peers and co-workers. Here, again, GAAB pointed his fingers directly in Plaintiff's face spitting on her, in an intimidating and aggressive fashion as he towered over her. GAAB's violent conduct was threatening, humiliating, and disrespectful.

47.     Additionally, GAAB would threaten Plaintiff's employment. On August 7, 2019, GAAB told HARVEY "Grab your purse, let's go," to escort her off the premises in an attempt to terminate her.

48.     Plaintiff HARVEY was trained on financial and accounting principles, and performed her job as Senior Accountant admirably. Yet, during her employment, she was never

allowed to participate in financial meetings, and was told by MOSCHELLA that Mr. Fraggos felt she was not "a good fit."

49.     Defendant GAAB continuously scrutinized and/or criticized Plaintiff's work without justification.

50.     Plaintiff HARVEY would often complain to management that the financial numbers were being manipulated. When questioned by Plaintiff, GAAB would constantly, in a stern and disgusted tone, make comments to Plaintiff like "use your brain" and MOSCHELLA would state "I have millions of dollars riding on a deal with Angelo [Fraggos], no need to question anything the changes are coming from Angelo and Blue Point, you should be focused on being mentored."

51.     Defendant GAAB's harassment towards Plaintiff also included him making sarcastic and demeaning comments like "Maybe you can't hear me," making fun or light of the fact that HARVEY is severely hearing impaired, a physical disability and medical condition for which he was fully aware.

52.     On August 9, 2019, when Plaintiff HARVEY could take it no longer, she filed an internal formal Complaint against GAAB with Human Resources Director, Christina Ruiz ("Ruiz").

53.     Although Ruiz advised HARVEY their discussion would remain confidential, she immediately told Defendant MOSCHELLA.   MOSCHELLA told Plaintiff not to file the Complaint because it would anger GAAB, and he would only harass her more. He mentioned his "million dollar deal with Angelo [Fraggos]" and associated threats to anyone that made issues for the company. Later that same day, MOSCHELLA called Plaintiff into his office and again advised her not to file her complaint, and he threatened her even more.  He told her that GAAB would, for

certain, retaliate against her, and he would no longer be able to protect her.  He told her that HR could not help her because Ruiz had "one foot out the door."  He also reminded her that he had her personnel file in his possession[1].  Defendant MOSCHELLA then tried to give HARVEY a document to sign concerning her bonus structure.  When she reported this to HR, Ruiz told her "he is trying to buy your silence."  Ruiz instructs HARVEY to try to get any offers of money from MOSCHELLA in writing because otherwise, she would have no proof.

54.      MOSCHELLA successfully embedded in Plaintiff's mind that she had nowhere else to turn; that he was the key to protect her from job elimination and other threats.   He made known to Plaintiff, the following:

a).      That *he* was Human Resources.  A comment which was supported by the fact that HARVEY's personnel file was kept in MOSCHELLA's personal office and not in Human Resources.

b).      He made threats, reminding her that he knew where she lived, and where her children went to school;

c).      That her complaints would go nowhere;

d).      That the Human Resources Director, Christine Ruiz ("Ruiz") "had one foot in, and the other foot out the door."

e)       That it was his intent to fire Ruiz;

f).      That he was key and instrumental in causing the prior CFO, Gary Silver's termination;

g).      That if he was not there to protect her, she would be fired and harmed; and

h).      That all that was required for her job security was her compliance and/or willing to

---

[1] Italian Rose's policy regarding Personnel File Access specifically reads as follow: "Employee who wish to review their own file or request a copy should contact Human Resources.

do as he stated and a mandatory relationship to being mentored and sexual favors.

55.    HARVEY ultimately when back to Ruiz to complain about MOSCHELLA. Ruiz began to cry and admitted to also being harassed and bullied by Defendant MOSCHELLA and Defendant GAAB. She stated that Mr. Fraggos refused to talk to her about the harassment complaints against MOSCCHELLA and GAAB. In so doing, she stated the following: " I am gay" and "GAAB did not like that;" and MOSCHELLA "liked a certain type of woman and [she] did not fit that description."

56.    On August 19, 2019, before Plaintiff was to meet with Mr. Fraggos, to discuss her complaint, MOSCHELLA told HARVEY that they are friends, and no need to discuss "other issues" with Mr. Fraggos.  HARVEY believed MOSCHELLA's reference to "other issues" was, by implication, his way of referring to his inappropriate sexual conduct with her.

57.    Mr. Fraggos prohibited HARVEY from having HR present during his private meeting with her to speak on the internal complaint against GAAB after she requested HR to attend. He specifically stated that "I have experience with managing a company," there was "no need to involve HR," and "I am capable of running a company" and "have years of experience." During the meeting, HARVEY explained and discussed the complaint regarding GAAB and the incidents him assaulting her in July and August, as well as the threats from MOSCHELLA.

58.    Plaintiff's internal complaint specifically described the harassing, threatening, and bullying actions against her by Defendant GAAB.  She further complained of being constantly blamed for mistakes beyond her control because of unexpected management changes, and the incorrect data she was given, in addition to the manipulation of such data.  Plaintiff clearly stated she did not feel comfortable working with Defendant GAAB, either physically and/or via e-mail. She stated she did not feel safe and believed she would be retaliated against.  Defendant's agents

and supervisors knew or should have known of the harassing conduct.

59.     Plaintiff  HARVEY further stated she did not feel safe isolated and segregated in the file room. Mr. Fraggos stated he would have her seating changed and the work around with GAAB confirmed that she will no longer have to communicate with GAAB verbally or via email.

60.     Mr. Fraggos, stated "Terry [GAAB] does not seem as that guy but I will do an internal complaint and have Tony [MOSCHELLA] resolve the outcome, and any HR issues to only be discuss with Tony and I, and you are not to go to HR." FRAGGOS state he is assigning MOSHCHELLA to address the work around and not to involve HR.

61.     Mr. Fraggos concluded his internal investigation regarding GAAB by confirming that all of HARVEY'S complaints were true. A meeting was thereafter conducted between Plaintiff, Mr. Fraggos, Defendant MOSCHELLA and Defendant GAAB regarding Mr. Fraggos' findings.

62.     After the meeting, MOSCHELLA, in his private office, told HARVEY "this is all your fault while rubbing his hands down her back," "now you will be forced to work with me even more and take on additional task that Terry was responsible for," "Angelo and I have a million dollar deal, we are trying to get new business and if everything goes though he and I will make lots of money," "you should not have filed the internal complaint, now I cannot protect you from Angelo," and "GAAB was right when he said you do not use your brain."

63.     HARVEY's seating was changed to another room with three other co-workers in which one (Julie) had previously harassed HARVEY. The seating arrangement called for HARVEY to be placed against a wall out of view of others. Samantha, a co-worker, would often tell her HARVEY that the scent of her shampoo irritated her." HARVEY told her she did not have on fragrance.  Others were allowed to eat their lunch at their desk but Harvey was not permitted to

do so because "her food stinks." The co-workers' job roles called for them to constantly be on the phone which was really hard to focus or hear when other mangers or co-workers would approach HARVEY, thus effecting her job as they would also get offended and annoyed when asked to repeatedly themselves.

64.     HARVEY asked for reasonable accommodations to have her seat moved. MOSHCLELA denied. HARVEY contained to communicate with HR via text keeping her updated.

65.     On August 23, 2019, Plaintiff HARVEY was being both discriminated and retaliated against due to her internal complaint, filed a formal Charge of Discrimination with the Miami District of the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race, disability, and retaliation (EEOC Charge No.: 510-2019-05766).

66.     In August, 2019, HARVEY again complained to Ruiz that she was being sexually harassed by Defendant MOSCHELLA.  Later that month, on Wednesday, August 28, 2019, Ruiz asked HARVEY, "So, are you moving forward with your sexual harassment claim?"  Plaintiff HARVEY replied "Yes."  Nonetheless, contrary to company policy, HR did not commence an investigation.

67.     On Thursday, August 29, 2019, Defendant MOSCHELLA, via written correspondence, responded to Plaintiff HARVEY's internal complaint and requesting a recap of the meeting per HR advice after her meeting with Mr. Fraggos. The letter acknowledged the completion of his investigation, and the ultimate finding that HARVEY's allegations were meritorious, and therefore, substantiated.

68.     On or about September 4, 2019, Defendant ITALIAN ROSE was first notified that Plaintiff HARVEY had filed an EEOC Complaint.  Plaintiff HARVEY's Complaint was based on

the hostile work environment caused by Defendant GAAB.  Ruiz stated she had to forward it to Defendant MOSCHELLA to resolve it.

69.     Defendant MOSCHELLA, suspecting that any formal investigation would likely reveal his unlawful conduct, became desperate in his attempts to force HARVEY to withdraw her EEOC Charge of Discrimination ("Charge").

70.     Although Plaintiff HARVEY's internal complaint(s) were substantiated, and although Plaintiff HARVEY was advised she would no longer have to report to GAAB, and that they would ensure that there was no reoccurrence, that promise was never fulfilled.  HARVEY received no recognizable difference in treatment from GAAB, although admittedly, GAAB was a little more discrete.

71.     As a consequence of Plaintiff's internal complaint, she was now required to perform duties originally and previously assigned to GAAB.  This substantially increased her workload, and yet still, GAAB, on a daily basis, would criticize and scrutinize her work.

72.     Again, in or about September, 2019, MOSCHELLA, in a prepared summary for Defendant Fraggos per his request following the investigation, MOSCHELLA states to Plaintiff: "Thank you for bringing the incident with Terry Gaab to our attention and thank you for your detailed write-up.  I want to let you know that we completed our investigation of the allegations in your letter and found them to be true."

73.     Plaintiff HARVEY was asked to acknowledge and sign a prepared summary/recap which However, because the facts included in said summary were not accurate, Plaintiff refused to sign it.

74.     Shortly, thereafter, on or about September 12, 2019, when MOSCHELLA realized he could no longer convince Plaintiff to remain silent, and after his efforts to blackmail her were

futile, MOSCHELLA left the company by taking a family leave of absence.

75.    HARVEY, having believed MOSCHELLA when he said *he* was her "*only*

protection from GAAB, now truly feared for her job and life.  Feeling trapped, she then knew she

had no other alternative, but to file an internal complaint against MOSCHELLA with Defendant

ITALIAN ROSE.

76.    Plaintiff HARVEY, realizing she would now be at the mercy of Defendant GAAB,

and that there was now a strong likelihood that he would terminate her in retaliation for her filing

a complaint against him, and because she was unsure of Ruiz' ability to help her, made the decision

to inform Mr. Fraggos of the sexual harassment and hostile work environment she had endured

under MOSCHELLA's and GAAB's supervision.

77.    Plaintiff further feared retaliation for refusing to sign the summary and/or recap of

the investigation.  She now realized that MOSCHELLA was willing to fabricate the facts

concerning the events and/or incidents leading to her initial complaint, in an effort to protect his

own interests.

78.    In a 5 page e-mail, marked "urgent," addressed to CEO Fraggos, and copied to

Ruiz, Plaintiff HARVEY detailed the hostile work environment she had experienced while

employed with Defendant ITALIAN ROSE.

79.    In said complaint, HARVEY detailed the sexual harassment and hostile work

environment she had been experiencing throughout her employment. Specifically, she addressed

the unwelcome sexual harassment she endured at the hands of MOSCHELLA, as well as the verbal

and abusive treatment from GAAB, all of which created a distasteful and hostile work

environment.

80.    In response to HARVEY's complaint, Mr. Fraggos engaged the services of Nan

Zieleniec ("Zieleniec") to conduct an investigation of HARVEY's complaint.

81.     Zieleniec is the founder and president of Zielienic HR Solutions ("ZHR"), a company based out of Cleveland, Ohio, that provides, amongst other services, consulting services to public and privately held companies.  ZHR Solutions markets itself as having a "Customer-driven agenda with a focus on creating value."

82.     Although ZHR Solutions was, presumably, retained by Defendant ITALIAN ROSE to investigate Plaintiff HARVEY's complaint(s) of discrimination, a thorough and complete investigation never, in fact, took place.

83.     At the commencement of Zieleniec's investigation, Plaintiff HARVEY requested that HR be involved in the investigation, a request that was unexplainably denied.

84.     Shortly thereafter, during Zieleniec's interview with Plaintiff, Zieleniec made it known that her role was to "protect the integrity of the company." Zieleniec proceed to ask Plaintiff, "how much?"  Plaintiff, seemingly expressing confusion by the question, was asked by Zieleniec  a second time, "how much?"  Plaintiff HARVEY was initially confused as she believed Zieleniec's role was to investigate her complaint, not to negotiate a settlement.  When Plaintiff questioned her regarding the investigation, Zieleniec responded, "I have everything I need." Zielenic tried to send HARVEY home for the day, but she declined.

85.     Walter Weigel was brought in by Mr. FRAGGOS  as an alleged  temporary CFO replacement to MOCHELLA replacement.  Mr. Weigel met with HARVEY and stated that he "spoke with Terry [GAAB]" who stated that "[Plaintiff is] responsible for completing the TTM" (a file used in the monthly letter to Defendant BLUE POINT which includes the cash flow and where the company stood financially). HARVEY, verbally and in a written email, advised Mr. Weigel that she was not responsible for that file and that all she did was run a report from the

17

system to copy and paste on to their TTM file. She further advised Mr. Weigel that GAAB and MOCHELLA would go in and manipulate and complete the balance sheets and cash flow and use that report to create the monthly financial letter. HARVEY disclosed to Mr. Weigel that MOSCHELLA would make false changes and that GAAB would assist, and they would always have her re-run reports over going back years. Mr. Weigel simply responded, "well Addie just do your best."

86.     On September 24, 2019, Zieleniec presented Plaintiff HARVEY with a Severance Agreement, the execution of which required Plaintiff to, not only voluntarily relinquish her position as Senior Accountant, but also attached to a pre-drafted written letter for Plaintiff to sign withdrawing her Charge of Discrimination (EEOC Charge No.: 510-2019-05766).

87.     HARVEY did not sign the Agreement, primarily, because she wanted her complaint to be properly and seriously investigated, and secondarily, she needed and wanted to keep her job.

88.     On or about September 30, 2019, the Palm Beach Office of Equal Opportunity (PBOEO) was assigned by the Miami District Office to investigate Plaintiff's Charge of Discrimination, EEOC Charge No.: 510-2019-05766 (FEPA Charge No.: 1900347) ("Charge") under its work-sharing agreement.

89.     On or about October 4, 2019, Defendant ITALIAN ROSE was notified of Plaintiff's EEOC Charge of Discrimination.

90.     On October 11, 2019, approximately five (5) work days after Defendant ITALIAN ROSE received another notification of Plaintiff's Charge from the EEOC, and as a direct consequence of Plaintiff's failure to execute the Severance Agreement, Defendant ITALIAN ROSE placed Plaintiff HARVEY on a Performance Improvement Plan ("PIP").

91.     Mr. Weigel had no prior knowledge of the reasoning for the meeting regarding

HARVEY's write up. In fact, he confirmed in an e-mail that the decision to write HARVEY up was Zielenic's and Ruiz' idea. Ruiz later confirmed privately to Plaintiff that the write-up was actually Zielenic's and Fraggos' idea.

92.    The Standards of Performance noted and allegedly reviewed in the PIP were Plaintiff's productivity, attendance, communication, efficiency, quality of work and dependability. Specifically, the PIP noted that Plaintiff failed to come to work or was reporting to work late every day from October 1, 2019 through October 10, 2019.  The PIP period for review was designated for 30 days. However, no other areas noted on the PIP was either detailed or addressed in the PIP.

93.    As a further consequence, Plaintiff HARVEY was stripped of her duties and responsibilities as Senior Accountant and instead, in an effort to frustrate Plaintiff so that she would resign, assigned her to work in the warehouse performing job duties and responsibilities outside her job description.

94.    HARVEY sent an mail to Ruiz after the "write-up meeting" expressing how she felt she was being retaliated against etc.  Ruiz confirmed her response to HARVEY'S email was actually drafted by Zielenic and Mr. Weigel and, in regards to my request for a reasonable accommodation, the only option offered was to return back to file closet isolated and segregated.

95.    However, on October 22, 2019, just eleven (11) days after being placed on the PIP, Plaintiff was unjustly terminated.

96.    Prior to HARVEY's internal complaints of discrimination and harassment and her Charge of Discrimination with the EEOC, she was never disciplined by ITALIAN ROSE or BLUE POINT and was never told they had any issues with her.

97.    Defendant ITALIAN ROSE and Defendant BLUE POINT did not treat other non-Black, non-Haitian, and/or non-Disabled individuals in a similar fashion.

98.     HARVEY was the only Black employee who worked in administration, but did not work in the administration building.  She was forced to work in the file room with a file clerk who was also Black but was a temp worker.

99.     HARVEY rarely was able to take a lunch break and, when the office had office gatherings, she and her Black temp co-worker and roommate were never invited. Defendant MOSCHELLA even once asked the Black temp worker, " do you sell crack?

100.     On November 26, 2019, Plaintiff HARVEY, filed her second formal Complaint of Discrimination with the Miami District of the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on disability, and retaliation (EEOC Charge No.: 15M2020-00019. *See* Exhibit "A".

**COUNT  I**
**"QUID PRO QUO" SEXUAL HARASSMENT**
**In Violation of Florida Civil Rights Act of 1992, Chapter 760, *Florida Statutes* ("FCRA")**
**[AGAINST DEFENDANT ITALIAN ROSE and DEFENDANT BLUE POINT]**

101.     Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

102.     Pursuant to Chapter 760.10(1), Fla. Stat. ("FCRA"), it is an unlawful employment practice for an employer:  (a) To discharge or fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of, amongst other protected categories, an individual's sex.

103.     Defendant ITALIAN ROSE and Defendant BLUE POINT violated the FCRA when, Plaintiff HARVEY, while under Defendant MOSCHELLA's supervision, was subjected to severe and pervasive sexual harassment and sex-based harassment that altered Plaintiff's working conditions and created a hostile working environment.   Defendant MOSCHELLA used his supervisory position to subject Plaintiff to unwelcome sexual advances, requests for sexual favors

20

and/or other verbal, visual, or physical conduct of a sexual nature.

104.    Submission to this conduct was made explicitly and implicitly a term or condition of Plaintiff's employment or provision of services.  Plaintiff HARVEY's submission to or rejection of the conduct was used as a basis for employment decisions affecting Plaintiff.  All of Defendant MOSCHELLA's actions were deliberate and intentionally employed to manipulate Plaintiff against her wishes and/or desires.

105.    In addition to Defendant MOSCHELLA's unlawful and unwelcome conduct of a sexual nature, Defendant MOSCHELLA engaged in sexual and/or inappropriate banter.

106.    Defendant ITALIAN ROSE and Defendant BLUE POINT knew or should have known that such action constituted unlawful sex discrimination, and in particular, sexual harassment, showing a willful and/or reckless disregard for Plaintiff's statutorily protected rights.

107.    Despite having actual and constructive knowledge of the sexual harassment to which Plaintiff was subjected to, Defendant ITALIAN ROSE and Defendant BLUE POINT failed to take immediate and appropriate steps to remedy and/or stop the sexual harassment.

108.    By failing to enforce their policy against sexual harassment, failing to maintain an effective procedure for complaining about such conduct, and failing to otherwise inform Plaintiff HARVEY that Defendant ITALIAN ROSE and Defendant BLUE POINT will not tolerate sexual harassment in the workplace, Defendant ITALIAN ROSE and Defendant BLUE POINT did not take reasonable care to prevent sexual harassment and did not provide a reasonable avenue to report such conduct.

109.    Defendant ITALIAN ROSE and Defendant BLUE POINT knew or should have known that their actions constituted unlawful sex discrimination, including sexual harassment and sis vicariously liable for such conduct since same resulted in a tangible adverse action against

Plaintiff HARVEY in that she was subsequently terminated.

110.     As a direct and proximate result of Defendants' willful, knowing, and intentional sexual harassment, Plaintiff has sustained and continues to sustain substantial losses of earnings, employment benefits, other compensation; harm to her personal and business reputation; mental anguish; emotional distress including, but not limited to, humiliation and embarrassment; loss of the enjoyment of life; and other pecuniary and non-pecuniary losses.   These damages are continuing and are permanent.

111.     Defendants' sexual harassment was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to punitive damages.

112.     Plaintiff has incurred and continues to incur expenses and  fees.  Pursuant to Title VII, Plaintiff is entitled to recover reasonable fees and costs in an amount according to proof.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant ITALIAN ROSE and Defendant BLUE POINT in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this Court deems just and proper, and demands a trial by Jury on all issues so triable.

**COUNT  II**
**HOSTILE WORK ENVIRONMENT**
**In Violation of Florida Civil Rights Act of 1992 ("FCRA")**
**[AGAINST DEFENDANT ITALIAN ROSE and DEFENDANT BLUE POINT]**

113.     Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

114.     Defendant ITALIAN ROSE and Defendant BLUE POINT are each an "employer" as that term is defined in the FCRA.

115.    The FCRA provides that it is unlawful for any employee to discriminate against any individual with respect to the terms, conditions, or privileges of employment because of such person's sex, among other things. §760.10, *Florida Statutes*.

116.    As set forth above, Plaintiff was subjected to unwelcome sexual harassment from Defendant MOSCHELLA throughout her employment and was, therefore, discriminated against because of her sex: female.

117.    The harassment by DEFENDANT MOSCHELLA was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive and hostile work environment.

118.    Defendant ITALIAN ROSE and Defendant BLUE POINT knew or should have known of Defendant MOSCHELLA'S sexual harassment of Plaintiff, but each failed to take prompt and effective remedial action to address Plaintiff's concerns.

119.    The actions of Defendant ITALIAN ROSE and Defendant BLUE POINT were willful, wanton, and done with an utter disregard for whether their actions, and/or the actions of their managers and agents violated the law and Plaintiff's civil rights.

120.    Plaintiff is entitled to punitive damages against Defendant ITALIAN ROSE and Defendant BLUE POINT.

121.    As a direct and proximate result of Plaintiff being sexually harassed.  Plaintiff has sustained significant damages in the form of lost wages, lost benefits, lost pension, or retirement benefits, and severe emotional and mental anguish, and will continue to sustain these damages in the future.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant ITALIAN ROSE and Defendant BLUE POINT in favor of Plaintiff for compensatory damages; special damages for

mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this Court deems just and proper, and demands a trial by Jury on all issues so triable.

**COUNT  III**
**HOSTILE WORK ENVIRONMENT**
**In Violation of Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C.  § 2000e,*et seq* ("Title VII")**
**[AGAINST DEFENDANT ITALIAN ROSE and DEFENDANT BLUE POINT]**

122.     Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

123.     Defendant ITALIAN ROSE and Defendant BLUE POINT are each an "employer" as that term is defined in Title VII.

124.     Title VII provides that it is unlawful for any employee to discriminate against any individual with respect to the terms, conditions, or privileges of employment because of such person's sex, among other things. 42 U.S.C §2000e *et seq*.

125.     As set forth above, Plaintiff was subjected to unwelcome sexual harassment from Defendant MOSCHELLA throughout her employment and was, therefore, discriminated against because of her sex: female.

126.     The harassment by Defendant MOSCHELLA was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive and hostile work environment.

127.     The harassment by Defendant ITALIAN ROSE and Defendant BLUE POINT was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive and hostile work environment.

128.    Defendant ITALIAN ROSE and Defendant BLUE POINT knew or should have known of Defendant MOSCHELLA'S sexual harassment of Plaintiff, but it failed to take prompt and effective remedial action to address Plaintiff's concerns.

129.    The actions of Defendant ITALIAN ROSE and Defendant BLUE POINT were willful, wanton, and done with an utter disregard for whether its actions violated the law and Plaintiff's civil rights.

130.    Plaintiff is entitled to punitive damages against Defendant ITALIAN ROSE and Defendant BLUE POINT.

131.    As a direct and proximate result of Plaintiff being sexually harassed.  Plaintiff has sustained significant damages in the form of lost wages, lost benefits, lost pension, or retirement benefits, and severe emotional and mental anguish, and will continue to sustain these damages in the future.

**WHEREFORE**, Plaintiff prays for a Judgment against DEFENDANT ITALIAN ROSE in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this Court deems just and proper, and demands a trial by Jury on all issues so triable.

**COUNT IV**
**RACE-BASED DISCRIMINATION**
**In Violation of Florida Civil Rights Act of 1992 ("FCRA")**
**[AGAINST  DEFENDANT ITALIAN ROSE and DEFENDANT BLUE POINT]**

132.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

133.    This is an action for discrimination based upon race under the FCRA.  Defendant

is prohibited under the FCRA from discriminating against Plaintiff because of her race with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

134.    Plaintiff belongs to a protected class under the FCRA in that she is a Black/Haitian individual.

135.    Defendant ITALIAN ROSE and Defendant BLUE POINT, and their managers and agents, violated the FCRA by intentionally discriminating against Plaintiff by subjecting her to unfavorable and disparate treatment regarding the terms, conditions and privileges of employment.

136.    Defendants violated FCRA by discharging and discriminating against Plaintiff based on her race.

137.    Defendants' reasons for Plaintiff's termination are pre-textual in nature, and intended to conceal the unlawful and true nature of its conduct.

138.    Defendants acted intentionally and with malice and reckless disregard for Plaintiff's rights under the FCRA.

139.    As a direct and proximate result of Defendants' unlawful and discriminatory employment practices in violation of FCRA, Plaintiff has suffered, and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Plaintiff prays for a Judgment against DEFENDANT ITALIAN ROSE in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and

expert fees; and any and all other relief this Court deems just and proper, and demands a trial by Jury on all issues so triable.

**COUNT V**
**RACE-BASED DISCRIMINATION**
**In Violation of Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. §2000e,*et seq* ("Title VII")**
**[AGAINST DEFENDANT ITALIAN ROSE and DEFENDANT BLUE POINT]**

140.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

141.    This is an action for discrimination based upon race under Title VII.

142.    Plaintiff belongs to a protected class under Title VII in that she is a Black/Haitian individual.

143.    Defendant ITALIAN ROSE and Defendant BLUE POINT, and their managers and agents, violated Title VII by discriminating against Plaintiff based on her race with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

144.    Defendants violated Title VII by discharging and discriminating against Plaintiff based on her race.

145.    Defendants acted intentionally and with malice and reckless disregard for Plaintiff's rights.

146.    Defendants' reason for Plaintiff's termination is pre-textual in nature, and intended to conceal the unlawful and true nature of their conduct.

147.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Title VII, Plaintiff has suffered and continues to suffer lost wages, lost benefits, as well as severe mental anguish and emotional distress, including, but not limited  to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant  ITALIAN ROSE in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this Court deems just and proper, and demands a trial by Jury on all issues so triable.

**COUNT VI**
**NATIONAL ORIGIN DISCRIMINATION**
**In Violation of Florida Civil Rights Act of 1992 ("FCRA")**
**[AGAINST DEFENDANT ITALIAN ROSE and DEFENDANT BLUE POINT]**

148.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein a s though fully set forth herein.

149.    At all times relevant to this action, Plaintiff  was in a protected category under the FCRA because of her national origin.  Plaintiff is Haitian.

150.    Defendant ITALIAN ROSE and Defendant BLUE POINT are prohibited under the FCRA from discriminating against Plaintiff because of her national origin with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

151.    Defendants violated the FCRA by discharging and discriminating against Plaintiff based on her national origin.

152.    Defendants intentionally discriminated against Plaintiff on the basis of her national origin.

153.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the FCRA, Plaintiff has suffered and continues to suffer lost wages, lost

benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitle to an award of monetary damages and other relief.

> **WHEREFORE**, Plaintiff prays for a Judgment against DEFENDANT ITALIAN ROSE In favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this Court deems just and proper, and demands a trial by Jury on all issues so triable.

**COUNT VII**
**<u>NATIONAL ORIGIN DISCRIMINATION</u>**
**In Violation of Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. s.2000e,*et seq* ("Title VII")**
**[AGAINST  DEFENDANT ITALIAN ROSE and DEFENDANT BLUE POINT]**

154.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

155.    At all times relevant to this action, Plaintiff was in a protected category under Title VII because of her national origin.  Plaintiff is Haitian.

156.    Defendant ITALIAN ROSE and Defendant BLUE POINT are prohibited under the Title VII from discriminating against Plaintiff because of her national origin with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

157.    Defendants violated Title VII by discharging and discriminating against Plaintiff based on her national origin.

158.    Defendants intentionally discriminated against Plaintiff on the basis of her national

origin.

159.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitle to an award of monetary damages and other relief.

**WHEREFORE**, Plaintiff prays for a Judgment against DEFENDANT ITALIAN ROSE In favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this Court deems just and proper, and demands a trial by Jury on all issues so triable.

**COUNT VIII**
**DISABILITY DISCRIMINATION**
**( In Violation of  The American With Disabilities Act , as Amended ("ADAAA")**
**[AGAINST  DEFENDANT ITALIAN ROSE and DEFENDANT BLUE POINT]**

160.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

161.    Plaintiff   HARVEY was an employee of Defendant ITALIAN ROSE and Defendant BLUE POINT within the meaning of  the American With Disabilities Act, as Amended ("ADAAA").

162.    Defendant ITALIAN ROSE and Defendant BLUE POINT were each an employer, covered by and within the meaning of the ADAAA.

163.    At all times material hereto, Plaintiff was and is an individual with a disability

30

within the meaning of § 3(2) of the ADA, 42 USC 12102(2) as she suffers from hearing loss which requires Plaintiff to wear bi-lateral hearing aids visible over both her left and right ears.

164.    Plaintiff is, and at all times pertinent hereto, a qualified individual with a disability as that term is defined in the ADA, 42 U.S.C. §12111(8), and Defendant ITALIAN ROSE and Defendant BLUE POINT knew or perceived her to have such a disability.

165.    Defendants were well-aware of Plaintiff's hearing impairment, as it was evident because she wore an external hearing apparatus on both her left and right ears.

166.    Defendants regarded Plaintiff's hearing impairment as a physical impairment that substantially limited one or more major life activities.

167.    Due to Plaintiff's severe hearing impairment, she requested a reasonable accommodation (i.e., a work environment and/or work space with less noise that would allow her to concentrate on work assignments without disruption).

168.    Her disability, and/or record of a disability, and/or perceived disability was a factor that  made a difference in Defendants' decision to discriminate, harass, and then terminate her employment.

169.    Defendants were aware that Plaintiff suffered from a medical condition which limited one or more of her major life activities and regarded her as having a disability but refused to provide her with reasonable accommodation even though to do so would not impose an undue hardship on Defendants.

170.    Defendants were predisposed to discriminate on the basis of disability and/or record of a disability and/or perceived disability and acted in accordance with that disposition.

171.    The actions of Defendants were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

172.     As a direct and proximate result of Defendants' violation of Plaintiff's rights as alleged, Plaintiff's terms, conditions, and privileges of employment were adversely affected.

173.     As a direct and proximate result of the Defendants' wrongful acts and omissions, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity, a loss of financial stability, loss of career opportunities; loss of fringe and pension benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, and peace of mind, anxiety about the future, loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

174.     Plaintiff is a member of a protected class under the FCRA.

175.     By the conduct described above, Defendants have engaged in discrimination against Plaintiff because of Plaintiff's disability and subjected the Plaintiff to disability-based animosity.

176.     Such discrimination was based upon the Plaintiff's disability in that Plaintiff was subjected to cruel, harassing and derogatory comments because of his disability.

177.     Defendants' conduct complained of herein was willful and in disregard of Plaintiff's protected rights.   Defendants and their supervisory personnel were well aware that discrimination on the basis of Plaintiff's disability was unlawful, but still acted in reckless disregard of the law.

178.     At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendants.

179.     Defendants retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory

actions.

180.    As a result of Defendants' actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

181.    The conduct of Defendants, by and through the conduct of its agents, employees, and/or representatives, and the Defendants' failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived her of her statutory rights under State and Federal law. Plaintiff to damages in the form of compensatory and punitive damages to punish the Defendants for their actions and to deter it, and others, from such action in the future.

182.    The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant ITALIAN ROSE and Defendant BLUE POINT in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front page; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this Court deems just and proper, and demands a trial by Jury on all issues so triable.

**COUNT IX**
**DISABILITY DISCRIMINATION**
**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION**
**(In Violation of the Americans with Disabilities Act ("ADAAA"))**
**[AGAINST DEFENDANT ROSE and DEFENDANT BLUE POINT]**

183.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

184.    At all times material hereto, Plaintiff  HARVEY was an employee of Defendant ITALIAN ROSE and Defendant BLUE POINT within the meaning of ADAAA.

185.    At all times material hereto, Defendants were an employer, covered by and within the meaning of  the ADAAA.

186.    At all times material hereto, Plaintiff was and is an individual with a disability within the meaning of [section 3(2) of the ADA, 42 USC 12102(2).] as she suffers from hearing loss which requires Plaintiff to wear bilateral hearing aids visible over both her left and right ears.

187.    Plaintiff is, and at all times pertinent hereto, a qualified individual with a disability as that term is defined in the [ADA, 42 U.S.C. s. 12111(8)], and Defendants knew or perceived her to have such a disability.

188.    As Defendants was undeniably aware of Plaintiff's hearing impairment, as she wore at all times an external hearing apparatus over both her left and right ears.

189.    Defendants regarded Plaintiff's hearing loss as a physical impairment that substantially limited one or more major life activities.

190.    Due to Plaintiff's severe hearing loss, she requested as a reasonable accommodation (i.e., a work environment and/or work space with less noise that would allow her to concentrate on work assignments without disruption). Plaintiff's disability, and/or record of a disability, and/or perceived disability was a factor that  made a difference in Defendant's decision to harass, and

then terminate her employment.

191.   Defendants were aware that Plaintiff suffered from a medical condition which limited one or more of her major life activities and regarded her as having a disability but refused to provide her with reasonable accommodation even though to do so would not impose an undue hardship on Defendant.

192.   Defendants were predisposed to discriminate on the basis of disability and/or record of a disability and/or perceived disability and acted in accordance with that disposition.

193.   The actions of Defendants were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

194.   As a direct and proximate result of Defendants' violation of Plaintiff's rights as alleged, Plaintiff's terms, conditions, and privileges of employment were adversely affected.

195.   As a direct and proximate result of the Defendants' wrongful acts and omissions, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity, a loss of financial stability, loss of career opportunities; loss of fringe and pension benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, and peace of mind, anxiety about the future, loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

196.   Plaintiff is a member of a protected class under the ADAAA.

197.   By the conduct described above, Defendants have engaged in discrimination against Plaintiff because of Plaintiff's disability and subjected the Plaintiff to disability-based animosity.

198.   Such discrimination was based upon the Plaintiff's disability in that Plaintiff was subjected to cruel, harassing and derogatory comments because of his disability.

199.   Defendants' conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendants and their supervisory personnel were well aware that discrimination on the basis of Plaintiff's disability was unlawful. but still acted in reckless disregard of the law.

200.   At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with Defendants.

201.   Defendants retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions

202.   As a result of Defendants' actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

203.   The conduct of Defendants, by and through the conduct of their agents, employees, and/or representatives, and the Defendants' failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived her of her statutory rights under State and Federal law.

204.   The actions of the Defendants and/or their agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages to punish the Defendants for their actions and to deter them, and others, from such action in the future.

205.   Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendants' discriminatory practices unless and until this

36

Honorable Court grants relief.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant ITALIAN ROSE and Defendant BLUE POINT favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this Court deems just and proper, and demands a trial by Jury on all issues so triable.

**COUNT X**
**<u>RETALIATION</u>**
**<u>For Reporting and Opposing Discrimination, Sexual Harassment,</u>**
**<u>and a Hostile Work Environment</u>**
**In Violation of Florida Civil Rights Act of 1992,**
**Chapter 760, *Florida Statutes* ("FCRA")**
**[AGAINST DEFENDANT ITALIAN ROSE and DEFENDANT BLUE POINT]**

206.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

207.    This is an action for retaliation under the FCRA.

208.    Plaintiff HARVEY engaged in protected activity while employed by the Defendants, including repeated reports to her supervisor and Defendants' Human Resources as well to the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") about the discriminatory treatment she was subjected to by Defendants that ultimately led to her unlawful termination.

209.    Plaintiff HARVEY is a member of a protected class because she reported unlawful employment practices and was a victim of retaliation thereafter.  There is, therefore, a causal connection between the reporting of the unlawful employment practices and the adverse employment actions.

210.     Defendants' stated reasons for the disparate and retaliatory treatment, including Plaintiff's termination, is a pretext to conceal the unlawful and true nature their conduct.

211.     Defendant ITALIAN ROSE and Defendant BLUE POINT's discriminatory conduct in violation of the FCRA, has caused Plaintiff to suffer a loss in pay, benefits, and prestige for which she is entitled to damages.

212.     Defendant ITALIAN ROSE and Defendant BLUE POINT acted intentionally and with malice and reckless disregard for Plaintiff's rights under the FCRA.

213.     As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered damages, including loss of wages; benefits and other compensation; harm to her personal and business reputations; mental anguish; emotional distress; including, but not limited to, humiliation and embarrassment; loss of the enjoyment of life, and other pecuniary and non-pecuniary losses.  These damages are continuing and are permanent in nature.  Plaintiff is entitled to punitive damages.

**WHEREFORE**, Plaintiff prays for a Judgment against DEFENDANT ITALIAN ROSE and Defendant BLUE POINT in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this Court deems just and proper, and demands a trial by Jury on all issues so triable.

**COUNT XI**
**RETALIATION**
**For Reporting and Opposing Discrimination, Sexual Harassment,**
**and a Hostile Work Environment**
**In Violation of Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e,*et seq.* ("Title VII")**
**[AGAINST DEFENDANT ITALIAN ROSE and DEFENDANT BLUE POINT]**

214.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

215.    This is an action for retaliation under Title VII.

216.    Plaintiff HARVEY engaged in protected activity while employed by the Defendants ITALIAN ROSE and BLUE POINT, including repeated reports to her supervisor and Defendants' Human Resources as well to the EEOC and the FCHR about the discriminatory treatment she was subjected to by Defendants that ultimately led to her unlawful termination.

217.    Plaintiff HARVEY is a member of a protected class because she reported unlawful employment practices and was a victim of retaliation thereafter.  There is, therefore, a causal connection between the reporting of the unlawful employment practices and the adverse employment actions.

218.    Defendants' stated reasons for the disparate and retaliatory treatment, including Plaintiff's termination, is a pretext to conceal the unlawful nature and true nature of their conduct.

219.    Defendants ITALIAN ROSE and DEFENDANT BLUE POINT's discriminatory conduct in violation of Title VII has caused Plaintiff to suffer a loss in pay, benefits, and prestige for which she is entitled to damages.

220.    Defendants ITALIAN ROSE and DEFENDANT BLUE POINT acted intentionally and with malice and reckless disregard for Plaintiff's rights under Title VII.

221.    As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered damages, including loss of wages; benefits and other compensation; harm to her personal and business reputations; mental anguish; emotional distress; including, but not limited to, humiliation and embarrassment; loss of the enjoyment of life, and other pecuniary and non-pecuniary losses. These damages are continuing and are permanent in nature.  Plaintiff is

entitled to punitive damages.

  **WHEREFORE**, Plaintiff prays for a Judgment against DEFENDANT ITALIAN ROSE in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this Court deems just and proper, and demands a trial by Jury on all issues so triable.

**COUNT XII**
**RETALIATORY TERMINATION**
**In Violation of Florida's Private Whistleblowers' Act ("FPWA")**
**Florida Statute, §448.102, *et seq*.**
**[AGAINST DEFENDANT ITALIAN ROSE and DEFENDANT BLUE POINT]**

  222. Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

  223. At all times herein mentioned, Florida's Private Whistleblower Act, §§ 448.101-448.105, Fla. Stat. ("FPWA"), was in full force and effect and binding on the Defendants ITALIAN ROSE and BLUE POINT.  This statute requires the Defendants to refrain from retaliating against any employee who objects to the Defendants' unlawful employment practices.

  224. At all relevant times mentioned herein, Plaintiff HARVEY was employed by Defendants ITALIAN ROSE and BLUE POINT as a Senior Accountant, and said Defendants were Plaintiff's employer within the meaning of FPWA.

  225. Plaintiff HARVEY engaged in protected activity pursuant to §448.102(3), Fla. Stat., when she complained of and/or reported to Defendants ITALIAN ROSE and BLUE POINT, as well as the EEOC and FCHR, the employment discrimination to which she was being subjected.

  226. Plaintiff HARVEY also complained to said Defendants about violations or

40

suspected violations of rules and regulations governed by the Internal Security Exchange Commission ("SEC").

227.   Plaintiff was subjected to adverse employment action when Plaintiff's employment was terminated by Defendants ITALIAN ROSE and BLUE POINT as a direct result of, and in retaliation for, Plaintiff's objection and refusal to participate in any unlawful activity.

228.   At all times hereto, the Defendants were prohibited from retaliating against an employee who opposes practices that are either illegal or believed to be illegal.

229.   At all times relevant hereto, Plaintiff's complaint of illegal activity was based upon her protected status as a person lawfully engaged in institutionally-protected activity.  Plaintiff HARVEY was opposing practices forbidden by employment discrimination laws and rules and regulations governed by the IRS and SEC.  Therefore, was engaged in protected activity under both State and Federal law.

230.   By and through Defendants ITALIAN ROSE and BLUE POINT's adverse employment action against HARVEY, to wit, terminating HARVEY's employment because she objected to Defendants' unlawful activities, Defendant ITALIAN ROSE and BLUE POINT have violated HARVEY's rights pursuant to §448.102(3), Fla. Stat.

231.   Defendants willfully and intentionally refused to comply with anti-retaliatory provisions as required by the law as set forth above, and instead discharged Plaintiff.  The retaliatory actions described above were conducted by Defendants ITALIAN ROSE and BLUE POINT because Plaintiff objected to, and refused to participate in said unlawful activities.

232.   As a direct and proximate result of the violation of Plaintiff's rights as alleged, Plaintiff HARVEY has suffered irreparable harm, injuries, and damages, including but not limited to loss of earnings and earnings capacity, past and future lost earnings, the value of fringe benefits,

and embarrassment, humiliation, anxiety about the future, damage to her good name and reputation, and a loss of the ordinary pleasures of everyday life, including the right to pursue the gainful occupation of her choice.  Plaintiff is entitled to punitive damages.

233.    By reason of the conduct of Defendants herein, Plaintiff has retained the undersigned attorney to prosecute her claim under the FPWA.  Plaintiff is, therefore, entitled to recover reasonable attorney's fees and costs pursuant to 448.104, Fla. Stat., in addition to other damages as provided by law, and as alleged herein.

234.    Defendants, by and through their managers and/or agents, committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of Plaintiff's rights, in that Defendants terminated her for voicing her objections to Defendants' unlawful activities. Defendants took such action despite the fact that they knew that Plaintiff's job performance was exemplary.  Thus, Plaintiff is entitled to recover punitive damages from Defendants ITALIAN ROSE and BLUE POINT.

**WHEREFORE**, Plaintiff prays for Judgment against Defendants ITALIAN ROSE and BLUE POINT, in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this court deems just, and demands a trial by Jury on all issues so triable.  Plaintiff also requests that the Court award reasonable attorneys' fees, costs and expenses associated with this action pursuant to section 448.104.

42

## COUNT XIII
## ASSAULT AND BATTERY
## [AGAINST ALL DEFENDANTS]

235.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

236.    Defendant MOSCHELLA intentionally and unlawfully engaged in unsolicited and unwelcome physical contact of a sexual nature with Plaintiff by, for example, physically and forcibly kissing her against her will, grabbing her by the arm, using his hands to go up and down her back, touching and rubbing up against her, engaging in sexual relations, all of which created in her a level of anxiety, humiliation, embarrassment, and fear of impending peril.

237.    Defendant GAAB intentionally and unlawfully engaged in unsolicited and unwelcome physical contact with Plaintiff by spitting on her and causing anxiety when he violated her personal space in a threatening and intimidating manner, all of which created in her a level of anxiety, humiliation, embarrassment, and fear of impending peril.

238.    The tortious acts committed upon Plaintiff HARVEY by Defendant MOSCHELLA and Defendant GAAB were unsolicited, unwelcome, and unwanted by Plaintiff and she did not willingly consent to any of his actions.

239.    As a direct and proximate result of the multiple assaults and batteries perpetrated upon Plaintiff, she has suffered mental pain, severe emotional distress, embarrassment, humiliation, mental anguish, loss of enjoyment of life, impairment of working ability, loss of dignity, loss of diminution of earning or earning capacity.

240.    Defendants ITALIAN ROSE and BLUE POINT are vicariously liable for all material adverse actions suffered by Plaintiff at the hands of Defendants' managers and supervisors.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant  ITALIAN ROSE, Defendant BLUE POINT, Defendant MOSCHELLA and Defendant GAAB, in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; back pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorney fees, punitive damages as provided by law,  and such other relief as this Court deems just and proper, and demands a trial by Jury on all issues so triable.

### COUNT XIV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### [AGAINST ALL DEFENDANTS]

241.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

242.    Throughout Plaintiff's employment, Defendant GAAB, on a daily basis, deliberately and recklessly subjected Plaintiff to humiliation and embarrassment, constantly berating her, belittling her, and threatening her employment in the presence of her co-workers and fellow employees.  The impact between Defendant GAAB and Plaintiff HARVEY caused substantial injury to Plaintiff.

243.    Throughout Plaintiff's employment, Defendant MOSCHELLA deliberately and recklessly subjected Plaintiff to humiliation and embarrassment, constantly threatening Plaintiff's position, thereby her livelihood, physically grabbing and kissing her behind closed doors, and threatening her company position if she failed to engage in sexual activity with him.  The impact between Defendant MOSCHELLA and Plaintiff HARVEY caused substantial injury to Plaintiff.

244.    Defendants' discriminatory, harassing and retaliatory actions against Plaintiff constituted severe and outrageous misconduct and caused Plaintiff extreme emotional distress, including, but not limited to anxiety, fear, humiliation, depression, sleeping problems, stomach

44

pain, nausea, exacerbation of existing physical ailments, and other mental ailments.

245.    Defendant GAAB's and Defendant MOSCHELLA's actions were carried out within the scope of their employment as Chief Operating Officer, and Chief Financial Officer, respectively.

246.    Defendants' knowing disregard for Plaintiff HARVEY'S welfare and safety, as well as their deliberate and intentional abuse of their power and position was the proximate cause of Plaintiff's injuries.

247.    Defendants were aware that treating Plaintiff in the manner alleged above, including threatening and depriving Plaintiff of her livelihood, would devastate Plaintiff, as a single mother, and cause her extreme hardship.  Therefore, Defendant GAAB and Defendant MOSCHELLA intended to cause Plaintiff to suffer emotional distress, or in the alternative, these Defendants engaged in conduct with reckless disregard of the high probability of causing Plaintiff to suffer emotional distress.

248.    As a proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, anguish, and severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

249.    Defendants' misconduct was committed intentionally, in a malicious, oppressive, fraudulent manner, entitling Plaintiff to  punitive damages.

250.    Defendants ITALIAN ROSE and Defendant BLUE POINT are therefore vicariously liable to Plaintiff HARVEY for all material adverse actions suffered by Plaintiff by the acts of both Defendant GAAB and Defendant MOSCHELLA.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant ITALIAN ROSE,

Defendant BLUE POINT, Defendant MOSCHELLA, and Defendant GAAB, in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this court deems just and proper, and demands herein, a trial by Jury on all issue so triable.

**COUNT XV**
**<u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>**
**[AGAINST ALL DEFENDANTS]**

251.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

252.    At all relevant times, herein, Defendant GAAB and Defendant MOSCHELLA owed Plaintiff HARVEY a duty to act with reasonable care and/or the injury to the Plaintiff was reasonably foreseeable.

253.    At all relevant times, Defendants had the power, ability, authority, and duty to stop engaging in the conduct described herein and to intervene to prevent or prohibit such conduct.

254.    At all times, Defendants knew or reasonably should have known that the conduct described herein would and did proximately result in Plaintiff's physical and emotional distress.

255.    Despite said knowledge, power and duty, Defendant GAAB and Defendant MOSCHELLA negligently failed to stop engaging in the conduct described herein and to prevent or to prohibit such conduct or otherwise to protect Plaintiff, thereby breaching their duty to her.

256.    Plaintiff HARVEY had to endure Defendants' constant discriminatory, harassing and retaliatory behavior of such a severe and outrageous nature and caused Plaintiff extreme emotional distress, including, but not limited to anxiety, fear, humiliation, depression, sleeping

problems, stomach pain, nausea, exacerbation of existing physical ailments, and other mental ailments.

257.     Defendant GAAB's actions were carried out within the scope of his employment as Chief Operating Officer for Defendant ITALIAN ROSE.

258.     Defendant MOSCHELLA's actions were carried out within the scope of his employment as Chief Financial Officer for Defendant ITALIAN ROSE.

259.     Defendants ITALIAN ROSE and BLUE POINT are therefore vicariously liable to Plaintiff HARVEY for the acts of both Defendant GAAB and Defendant MOSCHELLA.

260.     Defendants' conduct of treating Plaintiff in the manner alleged above, including threatening and depriving Plaintiff of her livelihood,  devastating Plaintiff, as a single mother, and causing her extreme hardship constitutes negligent infliction of emotional distress, and is actionable under the laws of the State of Florida.  Therefore, Defendant GAAB and Defendant MOSCHELLA intended to cause Plaintiff to suffer emotional distress, or in the alternative, these Defendants engaged in conduct with reckless disregard of the high probability of causing Plaintiff to suffer emotional distress.

261.     As a proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, anguish, and severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

262.     Defendants ITALIAN ROSE and BLUE POINT are vicariously liable for all material adverse actions suffered by Plaintiff by Defendants' managers and supervisors.

263.     Defendants' misconduct entitles Plaintiff to compensatory and punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant ITALIAN ROSE, Defendant MOSCHELLA, and Defendant GAAB, in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post-judgment interest, attorneys' fees, and expert fees; and any and all other relief this court deems just and proper, and demands herein, a trial by Jury on all issue so triable.

**COUNT XVI**
**NEGLIGENT SUPERVISION**
**AGAINST DEFENDANT ITALIAN ROSE and BLUE POINT**

264.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

265.    Defendants ITALIAN ROSE and BLUE POINT had a duty to exercise reasonable care to control Defendant MOSCHELLA and Defendant GAAB, so as to prevent them from harming others.  Defendants ITALIAN ROSE and BLUE POINT also had a duty to maintain a safe workplace free of Defendants' actions.

266.    At all relevant times, Defendant MOSCHELLA and Defendant GAAB were agents and employees of Defendants ITALIAN ROSE and BLUE POINT, and in doing the acts alleged herein, were acting in the course and within the scope of their authority as agents and employees of Defendants ITALIAN ROSE and BLUE POINT.

267.    Defendants ITALIAN ROSE and BLUE POINT are, therefore, vicariously liable to Plaintiff  for the acts of Defendant GAAB and Defendant MOSCHELLA alleged herein. Defendant MOSHELLA and Defendant GAAB as employees and agents, at times, during the performance of their work, acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

268.    Defendants ITALIAN ROSE and BLUE POINT breached their duty by negligently placing Defendant MOSCHELLA and Defendant GAAB in a supervisory position over employees, including Plaintiff, HARVEY, when it knew or should have known that Defendants MOSHCELLA and GAAB engaged in outrageous and harmful behavior toward Plaintiff.

269.    The actions of Defendants and their agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

270.    As a direct and proximate result of the Defendants' wrongful acts and omissions, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity, a loss of financial stability, loss of career opportunities; loss of fringe and pension benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, and peace of mind, anxiety about the future, loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant ITALIAN ROSE and DEFENDANT BLUE POINT in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this court deems just and proper, and demands herein, a trial by Jury on all issue so triable.

### COUNT XVII
### NEGLIGENT RETENTION
### AGAINST DEFENDANT ITALIAN ROSE and BLUE POINT

271.    Plaintiff repeats and re-alleges by reference each and every allegation contained herein above and incorporates the same herein as though fully set forth herein.

272.    Defendants ITALIAN ROSE and BLUE POINT had a duty to exercise reasonable

care to control Defendant MOSCHELLA and Defendant GAAB, so as to prevent them from harming others.  Defendants ITALIAN ROSE and BLUE POINT also had a duty to maintain a safe workplace free of Defendants' actions.

273.     At all relevant times, Defendant MOSCHELLA and Defendant GAAB were agents and employees of Defendants ITALIAN ROSE and BLUE POINT, and in doing the acts alleged herein, were acting in the course and within the scope of their authority as agents and employees of Defendants ITALIAN ROSE and BLUE POINT.

274.     Defendants ITALIAN ROSE and BLUE POINT are, therefore, vicariously liable to Plaintiff  for the acts of Defendant GAAB and Defendant MOSCHELLA alleged herein. Defendant MOSHELLA and Defendant GAAB as employees and agents, at times, during the performance of their work, acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

275.     Defendants ITALIAN ROSE and BLUE POINT, breached its duty by negligently retaining Defendant MOSCHELLA and Defendant GAAB in a supervisory position over employees, including Plaintiff, HARVEY, when it knew or should have known that Defendants MOSHCELLA and GAAB engaged in outrageous and harmful behavior toward Plaintiff.

276.     The actions of Defendants and their agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

277.     As a direct and proximate result of the Defendants' wrongful acts and omissions, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity, a loss of financial stability, loss of career opportunities; loss of fringe and pension benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, and peace of mind, anxiety about the future, loss of the ordinary pleasures of everyday life, including

the right to pursue the gainful employment of her choice.

**WHEREFORE**, Plaintiff prays for a Judgment against Defendant ITALIAN ROSE and Defendant BLUE POINT in favor of Plaintiff for compensatory damages; special damages for mental anguish, humiliation, and pain and suffering; punitive damages; lost wages; back pay; front pay; lost promotions and accompanying lost raises, benefits, costs, pre- and post- judgment interest, attorneys' fees, and expert fees; and any and all other relief this court deems just and proper, and demands herein, a trial by Jury on all issue so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, ADLINE HARVEY,  requests this Honorable Court:

a)       Enter judgment requiring Defendants to pay back wages and back benefits found to be due and owing at the time of trial, front pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, and prejudgment interest thereon;

b)       Grant Plaintiff her costs and an award of reasonable attorneys' fees (including expert fees) when and if one is obtained.

c).       Award any other and further relief  as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

**WHEREFORE**, Plaintiff HARVEY, further demands a trial by jury on all claims set forth herein which are so triable.

## CERTIFICATE OF CONFERRAL

Counsel for Defendants, Italian Rose Garlic Products LLC, Blue Point Capital Partners LLC, and Terry Gaab, have consented in writing to the filing of this First Amended Complaint pursuant to Fed.R.Civ.P. 15(a)(2).

Respectfully submitted,

| | |
|---|---|
| Law Offices of Levy & Levy, P.A. | GREENSPOON MARDER, P.A. |
| 1000 Sawgrass Corporate Parkway, Suite 588 | One Boca Place |
| Sunrise, Florida 33323 | 2255 Glades Road, Suite 400-E |
| Telephone: (954) 763-5722 | Boca Raton, Florida 33431 |
| Facsimile: (954) 763-5723 | Telephone: (561) 994-2212 x1567 |
| Email: chad@levylevylaw.com | Facsimile:  (561) 807-7527 |
| Service Email: assistant@levylevylaw.com | Email: peter.siegel@gmlaw.com |
| *Counsel for Plaintiff* | *Co-Counsel for Plaintiff* |
| | |
| */s/ Chad Levy* | */s/ Peter R. Siegel* |
| CHAD E. LEVY, ESQ. | Peter R. Siegel, Esq. |
| F.B.N.: 0851701 | Florida Bar No. 988634 |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Electronic Mail to below on June 18, 2021.

Patrick M. Muldowney, Esq.
Baker & Hostetler LLP
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4002
pmuldowney@bakerlaw.com
*Counsel for Defendants, Italian Rose Garlic Products LLC; Blue Point Capital Partners LLC; Angelo Fraggos; and Terry Gaab*

*/s/ Chad Levy*
CHAD E. LEVY, ESQ.